UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| DANITA COHEN-BREEN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GRAY TELEVISION GROUP, INC., a ) <br> Nevada Corporation d/b/a/ KOLO-TV, and ) <br> DOES I-X, inclusive, ) <br> ) <br> Defendants. ) <br> ) | 03:08-cv-00244-LRH-RAM <br><br> ORDER |

Before the court is Defendant Gray Television Group's Motion for Summary Judgment (#42[1]). Plaintiff Danita Cohen-Breen has filed an opposition (#46) to which Defendant replied (#51). Also before the court is Plaintiff's Motion for Summary Judgment (#43). Defendant has filed a response (#45) to which Plaintiff replied (#52).

**I.    Facts and Procedural History**

This is an employment discrimination and breach of contract dispute arising out of Plaintiff's employment with Defendant. Plaintiff began working for Defendant in 1997. Although Plaintiff began as a reporter, within a few months, Defendant promoted her to a news anchor for KOLO's weekday morning news program. Plaintiff continued as the morning news anchor until July 5, 2007.

In January of 2004, Plaintiff and Defendant entered into a five-year employment agreement. As a part of the agreement, Plaintiff agreed to:

---

[1]Refers to the court's docket entry number.

> [f]ulfill the duties of anchor/reporter and perform such services as [Defendant] in its exclusive discretion, shall designate with respect to broadcasts produced by [Defendant], which shall include, but not be limited to appearances on [Defendant's] schedule . . . .

(Def.'s Mot. Summ. J. (#42), Ex. N, Ex. 1.)

On March 3, 2004, Plaintiff and Defendant executed a "side letter" incorporating additional terms and conditions into Plaintiff's employment contract. In particular, Defendant agreed to:

> structure [Plaintiff's] workday to begin at 3 am and end as close to 9 am as is practical to insure smooth production of the News Channel 8 Daybreak show. [Plaintiff] recognizes that breaking news events will require flexibility of schedule and extended hours when necessary.

(*Id.*, Ex. N, Ex. 2.)

In January of 2007, Defendant's midday and evening news anchor, Tad Dunbar, informed Defendant that he would be leaving KOLO in July of 2007. In February or March of that year, allegedly to provide consistency to KOLO's viewers and to reduce costs, Matt James, KOLO's General Manager, decided to combine the morning news anchor position with the midday news anchor position. James further decided to offer the new position to Plaintiff. Accordingly, in April of 2007, James, News Director Bob Page, and Business Manager Donna Mayo met with Plaintiff to discuss the opportunity. Plaintiff indicated she would take the position only if she received additional compensation. Because Defendant would not provide additional compensation, Plaintiff declined to take the position.

Defendant then offered the morning and mid-day news anchor position to Kendra Kostelecky, who had been working as the weekend anchor. Kostelecky accepted the position without receiving any additional pay or benefits. Soon after, Defendants decided to replace Kostelecky with Anne Cutler, who was serving as the weekend anchor/reporter and producer. Cutler also received no change in pay or benefits as a result of accepting the morning and mid-day anchor position.

Because the morning anchor position was no longer available, Defendant offered Plaintiff the following options: (1) working as a weekend 'reporter/anchor"; (2) working weekday nights as a reporter; or (3) working as a morning reporter. Plaintiff chose to work as a morning reporter,

1  and in June of 2007, Plaintiff became a reporter for Defendant's morning news program. As a
2  reporter, Plaintiff's salary, benefits, and hours remained the same as they had been as an anchor.
3       In August of 2007, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal
4  Employment Opportunity Commission and the Nevada Equal Rights Commission. Plaintiff
5  alleged Page, the News Director, discriminated against her because she is Jewish. In particular,
6  Plaintiff alleged she was "harassed, demoted, and subject to different Terms & Conditions"
7  because of her religion. (Def.'s Mot. Summ. J. (#42), Ex. N, Ex. 7.) Plaintiff complained that
8  upon his arrival with KOLO, Page declared that he was a "Born-Again-Christian" and displayed
9  various religious objects around his office. Plaintiff further alleged that in a meeting on May 15,
10 2007, after asking Plaintiff to work additional hours without receiving additional compensation
11 or benefits, Page asked Plaintiff if she was Jewish. The following day Page allegedly stated,
12 "Jewish people are stubborn and sometimes people need to be humbled." (*Id.*) In addition,
13 Plaintiff alleged that Page asked Plaintiff if she would be taking religious holidays off and that
14 Page refused to grant her vacation request and accused her of delegating work to others and
15 speaking poorly of the station. On August 2, 2007, Defendant received notice of the Charge.
16      In November of 2007, Plaintiff amended her original Charge to include a retaliation
17 claim. The Amended Charge alleged Defendant "retaliated against [her] after receiving notice of
18 [her] discrimination complaint." (Compl. (#1), Ex. C.) In particular, Plaintiff attacked the
19 conclusions of Defendant's investigation into Plaintiff's complaint and alleged Defendant
20 assigned another employee to do public service announcements, assigned her more work than
21 other employees, and failed to respond to defamatory remarks made by a co-worker about her.
22      In response to Plaintiff's complaints, Defendant instituted an investigation into the
23 alleged discrimination. Defendant concluded that Plaintiff's allegations were unsubstantiated.
24 Defendant informed Plaintiff of its findings and told Plaintiff to contact the Director of
25 Programming in Omaha, Nebraska, if she felt any continuing harassment or retaliation.
26 ///
27 ///
28

**II.     Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

Where, as here, parties file cross-motions for summary judgment on the same claims

before the court, the court must consider each party's motion separately and on its own merits. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). "[T]he court must consider the appropriate evidentiary material identified and submitted in support of both motions, and opposition to both motions, before ruling on each of them." *Id.* at 1134.

### III. Defendant's Motion for Summary Judgment

Plaintiff asserts the following claims for relief: (1) unlawful discrimination; (2) unlawful retaliation; (3) breach of contract; and (4) breach of the covenant of good faith and fair dealing. Defendant seeks summary judgment with regard to each of these claims.

#### A. Discrimination

Plaintiff alleges Defendant discriminated against her on the basis of her religion in violation of Title VII and Chapter 613 of the Nevada Revised Statutes. The parties interpret this claim to include a claim of disparate treatment discrimination and a claim of hostile work environment discrimination. The court will address each theory below.

##### 1. Disparate Treatment

Title VII makes it an unlawful employment practice to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[2] 42 U.S.C. § 2000e-2. To prevail, the plaintiff must establish a prima facie case of discrimination by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff can establish a prima facie case of discrimination through either the burden shifting framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of discriminatory intent. *See Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)

---

[2]Similarly, Nevada Revised Statutes section 613.330 makes it an unlawful employment practice for an employer to "discriminate against any person with respect to his compensation, terms, conditions or privileges of employment, because of his race, color, religion, sex, sexual orientation, age, disability or national origin" Nev. Rev. Stat. § 613.330. Because a claim for discrimination under Nevada law is substantially similar to a Title VII claim, the court will discuss only Title VII.

1  ("When responding to a summary judgment motion . . . [the plaintiff] may proceed using the
2  *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial
3  evidence demonstrating that a discriminatory reason more likely than not motivated [the
4  employer].") (citation omitted) (alterations in original); *Enlow v. Salem-Keizer Yello Cab Co.*,
5  371 F.3d 645, 650 (9th Cir. 2004) (noting that when a plaintiff establishes a prima facie inference
6  of discrimination through direct or circumstantial evidence, "he will *necessarily* have raised a
7  genuine issue of material fact with respect to the legitimacy . . . of the employer's articulated
8  reason for its employment decision." (emphasis in original)).

9        Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of
10  establishing a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. If
11  the plaintiff succeeds in doing so, the burden shifts to the defendant to articulate a legitimate,
12  nondiscriminatory reason for its allegedly discriminatory conduct. *Id.* If the defendant provides
13  such a justification, the burden shifts back to the plaintiff to show that the defendant's
14  justification is a mere pretext for discrimination. *Id.* at 804.

15        For the purposes of this order, the court assumes that Plaintiff has demonstrated her prima
16  facie case of discrimination. That is, the court assumes that Plaintiff has demonstrated that she is
17  a member of a protected class, she was qualified for her position, she suffered an adverse
18  employment action, and that circumstances surrounding the adverse action give rise to an
19  inference of discrimination. *See Bodett v. Coxcom*, 366 F.3d 736, 743 (9th Cir. 2004) (citation
20  omitted).

21        Nonetheless, even assuming Plaintiff has met her initial burden, the court finds that
22  Defendant has articulated a legitimate, nondiscriminatory reason for its decision to (1) eliminate
23  Plaintiff's morning news anchor position and combine the position with the midday news anchor
24  position and (2) deny Plaintiff's request for an increased salary. Defendant asserts it made these
25  decisions because it "determined that having someone serve as anchor for both the morning and
26  mid-day news programs would reduce costs, smooth the transition of the departing mid-day
27  anchor for KOLO viewers, and increase ratings." (Def.'s Mot. Summ. J. (#42) at 13.) Plaintiff
28  does not appear to dispute that if true, these are legitimate reasons for Defendant's actions.

1  Instead, Plaintiff challenges the veracity of Defendant's offered reasons.

2  When the defendant demonstrates a legitimate, nondiscriminatory reason for its employment decision, the *McDonnell Douglas* presumption of discrimination "simply drops out of the picture." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1994)). The ultimate burden rests on the plaintiff to demonstrate that the defendant's offered reasons are a pretext for the employer's true discriminatory motive. *Id*. at 890. A plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F. 3d 1080, 1093-94 (9th Cir. 2001) (*quoting Texas Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In *Wallis*, the Ninth Circuit clarified the plaintiff's burden in demonstrating that the defendant's justification is a pretext:

> [I]n deciding whether an issue of fact has been created about the credibility of the employer's nondiscriminatory reasons, the district court must look at the evidence supporting the prima facie case, as well as the other evidence offered by the plaintiff to rebut the employer's reasons. And, in those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable issue of fact.

26 F.3d at 890.

Plaintiff has failed to meet her burden. The undisputed evidence before the court is that in February or March of 2007, Matt James, the general manager of KOLO, decided to combine the morning news anchor position with the midday news anchor position. Once James decided to combine the positions, he offered the position to Plaintiff. Because Defendant would not agree to increase Plaintiff's salary, Plaintiff decided not to take the position. Once Plaintiff declined, the position was filled by individuals who received nearly the same salary as Plaintiff.

Even assuming Plaintiff had a protected contract right to the weekday morning anchor position, there is simply no evidence before the court suggesting that Page, the individual Plaintiff accuses of engaging in the discriminatory conduct, was involved in the decision to eliminate Plaintiff's morning anchor position and combine it with the midday anchor position.

1  Page did not begin working for Defendant until March of 2007.  Once hired, James discussed his
2  decision to combine the positions with Page, and Page agreed with the decision.  Likewise, no
3  evidence before the court suggests any discriminatory animus attributable to James.
4        To the extent that Plaintiff argues that Page influenced the decision not to increase
5  Plaintiff's salary despite Plaintiff's contract to work only a limited number of hours, thereby
6  making the offer one Plaintiff could not accept, the court rejects Plaintiff's argument. No
7  reasonable jury could conclude, based on the evidence before the court, that Defendant's conduct
8  was a mere pretext for discrimination.  In other words, there is no evidence to support the
9  inference suggested by Plaintiff.  Instead, the evidence indicates that to provide consistency to
10 viewers, increase ratings, and decrease costs, Defendant made the business decision to combine
11 the morning and midday news anchor positions.  When Plaintiff did not accept Defendant's offer,
12 Defendant made a nearly identical offer to Plaintiff's replacement.  While, as discussed below,
13 these facts may give rise to a claim for breach of contract, the facts do not support a
14 discrimination claim.  Accordingly, the court will grant summary judgment as to Plaintiff's
15 religious discrimination claim.

16       **2.**      **Hostile Work Environment**

17       Although not explicitly included in the text of Title VII, claims based on a hostile work
18 environment fall within Title VII's protections.  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).
19 To state an actionable claim under Title VII, Plaintiff must show that (1) she was subjected to
20 verbal or physical conduct based on her religion; (2) the conduct was unwelcome; and (3) the
21 conduct was "sufficiently severe or pervasive to alter the conditions of her employment and
22 create an abusive working environment."  *Galdamex v. Potter*, 415 F.3d 1015, 1023 (9th Cir.
23 1995) (*quoting Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).
24       Defendant challenges Plaintiff's ability to demonstrate the third element of a hostile work
25 environment claim.  To determine whether conduct was sufficiently severe or pervasive to violate
26 Title VII, the court considers "all the circumstances, including the frequency of the
27 discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere
28 offensive utterance; and whether it unreasonably interferes with an employee's work

1  performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)).

2  "The working environment must both subjectively and objectively be perceived as
3  abusive." *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995) (*citing*
4  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). To determine if the workplace is objectively
5  hostile, courts examine the issue from the perspective of a reasonable person with the same
6  fundamental characteristics as the claimant. *Id.* Key factors in determining whether a work
7  environment is hostile include (1) the frequency of the conduct; (2) the severity of the conduct;
8  (3) whether the conduct is physically threatening or humiliating, as opposed to a mere utterance;
9  and (4) whether the conduct unreasonably interferes with an employee's work performance.
10 *Harris*, 510 U.S. at 23.

11 The court finds that Page's conduct was not sufficiently frequent or severe to support a
12 claim for a hostile work environment. Page's conduct and comments were not threatening, and
13 there is no evidence indicating that his conduct interfered with Plaintiff's work performance in
14 any way. In sum, although Page appears to have been a devout Christian, the instances Plaintiff
15 cites do not rise to the level of severe and pervasive harassment. Summary judgment with regard
16 to this claim is therefore appropriate.[3]

17 **B.    Retaliation**

18 In her retaliation claim, Plaintiff alleges, "an adverse employment action was directed at
19 [Plaintiff] because she refused to acquiesce to the religious hostility and harassment and
20 otherwise opposed the unlawful conduct of KOLO TV and/or its managerial employees" in
21 violation of Chapter 613 of the Nevada Revised Statutes and Title VII. (Compl. (#1), Ex. A, ¶

---

[3]Defendant also argues that even if Plaintiff was subject to a hostile work environment, it is not liable for Page's harassment under the "*Ellerth-Faragher*" affirmative defense. Under the *Ellerth-Faragher* affirmative defense, an employer is not liable where a hostile work environment claim is based on the conduct of a supervisor and the employer demonstrates that (1) the employer took reasonable care to remedy and prevent any harassing behavior and (2) the plaintiff employee unreasonably failed to take advantage of any preventative opportunities provided by the employer. *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998). Regardless, because Plaintiff has failed to present genuine issues of material fact with regard to her hostile work environment claim, Defendant need not rely on the affirmative defense.

1  18.)

2  Under section 2000e-3(a), it is unlawful "for an employer to discriminate against any of
3  his employees . . . because he has opposed any practice made an unlawful employment practice
4  by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner
5  in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To
6  establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in an
7  activity protected under title VII; (2) her employer subjected her to an adverse employment
8  action; and (3) a causal link exists between the protected activity and the adverse employment
9  action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) *(citing Ray v.*
10 *Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). If a plaintiff establishes a prima facie case of
11 retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory
12 reason for its decision. *Ray*, 217 F.3d at 1240. If the defendant demonstrates such a reason, the
13 burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for
14 discrimination. *Id.*

15 **1.    Exhaustion**

16 Defendant first argues Plaintiff's retaliation claim is procedurally barred because Plaintiff
17 has not satisfied the administrative prerequisites for filing a claim under Title VII. To bring a
18 claim under Title VII, a plaintiff must first file a charge with the EEOC within 180 days of the
19 alleged unlawful employment practice. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1101 (9th
20 Cir. 2008) (*citing* 42 U.S.C. § 2000e-5(e)). If the EEOC does not bring suit based on the charge,
21 it must notify the plaintiff that she can file suit. *Id.* (*citing* 42 U.S.C § 2000e-5(f)). The EEOC
22 provides this notice through a right-to-sue letter. *Id.* Once a plaintiff receives this letter, she has
23 ninety days to file suit. *Id.* (*citing* 42 U.S.C § 2000e-5(f)).

24 Plaintiff filed her original Charge of Discrimination with NERC and the EEOC on July
25 24, 2007. Approximately one week later, Plaintiff's counsel delivered a copy of the Charge to
26 Defendant. In November of 2007 Plaintiff amended her Charge to include allegations of
27 retaliation. However, Defendant never received notice of the Amended Charge, and no right to
28 sue letter issued with respect to the Amended Charge. Indeed, although NERC issued a right to

sue letter in February of 2008 concerning the original Charge, Defendant did not receive notice of the Amended Charge until April 18, 2008, when it received Plaintiff's complaint initiating this suit.

Defendant argues Plaintiff failed to exhaust her administrative remedies under Title VII for the following two reasons: (1) Defendant did not receive notice of Plaintiff's Amended Charge and (2) Plaintiff did not receive a right-to-sue letter for her Amended Charge.

### a. Notice of Amended Charge

Title VII requires the EEOC to serve the employer a copy of the charge within ten days of its filing with the EEOC. 42 U.S.C. § 2000e-5(b), (e). Plaintiff does not dispute that, as to the Amended Charge, the EEOC failed to comply with this mandate. Nonetheless, "A Title VII complainant is not charged with the commission's failure to perform its statutory duties." *Watson v. Gulf and W. Indus.*, 650 F. 2d 990, 992 (9th Cir. 1981) (citations omitted) (finding that EEOC's failure to serve the charge on the employer did not bar the employee's claim). Accordingly, the EEOC's failure to serve notice of the Amended Charge does not bar Plaintiff's retaliation claim.

### b. Right-To-Sue Letter

Defendant also argues Plaintiff's retaliation claim is barred because Plaintiff never received a right-to-sue letter for the claim. However, "[f]ailure to obtain a federal right-to-sue letter does not preclude federal jurisdiction." *Surrell*, 518 F.3d at 1104 (citation omitted). Instead, obtaining the letter is a general requirement that the court may excuse in certain cases. *Id.* Courts generally look to the fault of the parties in determining whether to excuse the failure to obtain a right-to-sue letter. *Id.* at 1105 (citation omitted). However, in *Surrell*, the Ninth Circuit adopted the "persuasive approach" of other circuits which hold that once a plaintiff is entitled to receive a right-to-sue letter, it makes no difference whether the plaintiff actually obtained the letter.[4] *Id.* (citation omitted).

---

[4] The exact holding in *Surrell* was that "where, as here, a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency." Although in this case Plaintiff did not receive a right-to-

11

1     Here, because the EEOC did not act upon the allegations in Plaintiff's Amended Charge,
2  Plaintiff was entitled to receive her right-to-sue letter 180 days after filing the Amended Charge.
3  Accordingly, Plaintiff was entitled to receive her right-to-sue letter in May of 2008. Plaintiff
4  commenced this action in state court on April 17, 2008. Thus, Plaintiff filed suit before she was
5  entitled to receive her right-to-sue letter.

6     Nonetheless, "A Title VII complainant may file an action prior to receiving her right to
7  sue letter, provided there is not evidence showing that the premature filing precluded the state
8  from performing its administrative duties or that the defendants was prejudiced by such filing."
9  *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 144f n.1 (9th Cir. 1990) (citation omitted).
10 Defendant contends as a result of Plaintiff's filing suit without receiving a right-to-sue letter, it
11 was prejudiced because it had no opportunity to investigate or respond to Plaintiff's retaliation
12 charge.

13    The court does not find Defendant's claim of prejudice compelling. The "principal
14 function of procedural rules should be to serve as useful guides to help, not hinder, persons who
15 have a legal right to bring their problems before the courts, and decision on the merits should not
16 be avoided on the basis of mere technicalities." *Edwards*, 892 F.2d at 1445 (internal quotation
17 marks and citation omitted). Upon receipt of the complaint, Defendant received notice of
18 Plaintiff's retaliation claim. It is not clear, and Defendant does not explain, what effect an
19 investigation into Plaintiff's allegations would have had.

20    Moreover, Plaintiff's receipt of a right-to-sue letter would not have required Plaintiff to
21 share the letter with Defendant before filing suit. As such, even if Plaintiff had received the
22 letter, Defendant would nonetheless not have notice of Plaintiff's claim until Plaintiff filed suit.
23 Thus, Defendant was not prejudiced by Plaintiff's filing her complaint approximately one month
24 before being entitled to a right-to-sue letter. Accordingly, the court finds that Plaintiff's

---

26
27  sue letter from NERC, the holding in *Surrell* is not limited to cases where the plaintiff obtains a right-to-sue letter from the state agency. In particular, the court notes that the case the *Surrell* court cites for the proposition that entitlement to the letter is sufficient did not involve the receipt of a right-to-sue letter
28  from a state agency.

retaliation claim is not procedurally barred.

### 2. Merits of Retaliation Claim

As noted above, to establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in an activity protected under title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas*, 379 F.3d at 811 (*citing Ray*, 217 F.3d at 1240). Defendant argues Plaintiff cannot demonstrate that she has suffered an adverse employment action.

In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). While a prima facie case of Title VII's substantive provision (anti-discrimination) and a prima facie case of retaliation both require an adverse employment action, the two terms are not coterminous. *Id.* at 67. Instead, "the scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.*

In the Amended Charge, Plaintiff alleged Defendant "retaliated against [her] after receiving notice of [her] discrimination complaint." (Compl. (#1), Ex. C.) In particular, Plaintiff attacked the conclusions of Defendant's investigation into Plaintiff's complaint and alleged Defendant assigned another employee to do public service announcements, assigned her more work than other employees, and failed to respond to defamatory remarks made by a co-worker about her. In addition, in her opposition Plaintiff identifies the following as adverse employment actions: (1) Page called her names, such as "horse-face"; (2) Page heightened his review of her work; (3) Page began canvassing Plaintiff's co-workers about her work; (4) Page complained to her co-workers that she was not doing enough work; (5) Defendant removed Plaintiff from the public service announcements; (6) Page began delaying decisions on Plaintiff's vacation requests; (7) Page required Plaintiff, and no other employees, to work on New Years Day, 2008.

The court finds that based on the evidence before it, issues of fact remain concerning the

severity and nature of the actions suffered by Plaintiff. Likewise, the court finds that there are issues of fact as to the causal connection between Plaintiff's filing of the discrimination complaint and the allegedly adverse actions. Accordingly, the court will deny summary judgment with regard to the retaliation claim.

### C.     Breach of Contract

Plaintiff alleges Defendant breached Plaintiff's employment contract by demoting Plaintiff, interfering with her vacations, and altering her work hours. A claim for breach of contract requires the plaintiff to demonstrate the following elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (*citing Richardson v. Jones*, 1 Nev. 405, 405 (1865)).

The court finds that, as to Plaintiff's right to work as the weekday morning anchor and to work the hours specified in the contract, the language of the contract is ambiguous, requiring an inquiry into the intent of the parties. Because issues of fact remain concerning the parties' intent and because the jury is the proper entity to conduct such an inquiry, the court will deny summary judgment on the breach of contract claim.

### D.     Breach of Covenant of Good Faith and Fair Dealing

Under Nevada law, a breach of the implied covenant of good faith and fair dealing occurs where "the terms of the contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1016 (Nev. 2004). Plaintiff has presented evidence suggesting that Defendant, through Mr. James, contravened the purposes of her employment agreement by eliminating her weekday morning news anchor position. Because issues of fact remain concerning Defendant's conduct and compliance with the contract, the court will deny summary judgment as to the breach of the covenant of good faith and fair dealing claim.

## IV.     Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment on her breach of contract claim. In her motion, Plaintiff asserts different bases for the breach than alleged in her complaint. In particular, she

1  alleges Defendant breached the contract by (1) "demanding that she work 50% more hours for no
2  additional compensation" and (2) "removing [Plaintiff] from her 'anchor' position when she
3  refused to concede to KOLO's demands." (Pl.'s Mot. Summ. J. (#43) at 7.)
4      As discussed above, the court finds that issues of fact remain concerning the interpretaion
5  of the contract. Accordingly, the court will deny summary judgment.
6      IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (#42)
7  is DENIED in part and GRANTED in part.
8      IT IS FURTHER ORDERED that Plaintiff's Partial Motion for Summary Judgment (#43)
9  is DENIED.
10     IT IS FURTHER ORDERED that the parties shall lodge their proposed joint pretrial
11 order within thirty (30) days from entry of this Order. *See* Local Rules 16-4 and 26-1 (e)(5).
12     IT IS SO ORDERED.
13     DATED this 30th day of September, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE